```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION
```

WILLIAM RYAN HOMES
FLORIDA, INC.,

    Plaintiff,

v.                              CASE NO:   8:12-cv-1575-T-33TGW

WHITNEY NATIONAL BANK,

    Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Whitney National Bank's Motion to Dismiss (Doc. # 6), which was filed on July 23, 2012. Plaintiff William Ryan Homes filed a Response in Opposition to the Motion to Dismiss (Doc. # 8) on August 7, 2012. For the reasons that follow, the motion is granted in part and denied in part.

**I. Background**

On or about February 16, 2005, William Ryan Homes and Byrd Corporation entered into a purchase and sale agreement for certain real property ("Mira Bella Agreement"). (Doc. # 2 at ¶ 4). On or about May 24, 2005, Byrd Corporation assigned all of its right, title, and interest in the Mira Bella Agreement to CR672, LLP. Id. at ¶ 5. On that same date, CR672 executed and delivered a promissory note in the

amount of $11,850,000 to Whitney National Bank.  <u>Id.</u> at ¶ 6. The note "was secured by, among other things, that Mortgage and Security agreement recorded on June 6, 2005 in O.R. Book 15078, Page 197, Public Records of Hillsborough County, Florida [ ].  The Mortgage encumbers the real and personal property described therein [ ], which includes the majority of the real property described in the Mira Bella Agreement." <u>Id.</u>

Also on May 24, 2005, in order to further secure repayment of the note, CR672 executed and delivered a collateral assignment of contract to Whitney National Bank, "which assigned to Whitney all the right, title and interest of CR672 in and to the Mira Bella Agreement, including all earnest money or other deposits paid or payable under the Mira Bella Agreement."  <u>Id.</u> at ¶ 7.  The Mira Bella Agreement required William Ryan Homes to make deposit payments in the total sum of $1,147,125.00.  <u>Id.</u> at ¶ 8.  William Ryan Homes paid the entire amount of the deposit to CR672 under the Mira Bella Agreement.  <u>Id.</u>  CR672 subsequently paid the deposit to Whitney National Bank.  <u>Id.</u>  On or about July 21, 2005, Whitney National Bank, William Ryan Homes, and CR672 entered into a Lender Recognition Agreement ("LRA") which provides in relevant part that Whitney National Bank, "as the 'Lender,' must return the full deposit paid by William Ryan Homes, as

2

'Purchaser' under the Mira Bella Agreement, upon a default by CR672, as 'Seller,' if Whitney elects not to perform CR672's obligations under the Mira Bella Agreement and William Ryan Homes elects not to purchase the property." Id. at ¶ 9.

CR672 subsequently failed to complete its development obligations by the completion date specified in the Mira Bella Agreement.  Id. at ¶ 10.  Consequently, on or about November 10, 2006, William Ryan Homes sought to terminate the Mira Bella Agreement and recover the deposit.  Id.  However, Whitney National Bank never performed CR672's obligations under the Mira Bella Agreement.  Id. at ¶ 11.  William Ryan Homes did not elect to purchase the property and has not been refunded any portion of the deposit.  Id. at ¶¶ 12, 13.

Ultimately, CR672 defaulted on its obligations to Whitney National Bank.  Id. at ¶ 14.  As a result, Whitney National Bank filed a foreclosure action in the Circuit Court for Hillsborough County, Florida, to enforce its rights under the loan documents.  Id.  On April 25, 2011, Whitney National Bank's successor, SF-672, LLC, obtained ownership of the note and mortgage, and CR672 transferred title to 672-HAI, LLC, by quitclaim deed in lieu of foreclosure.  Id. at ¶ 16.  SF-672 and 672-HAI "are related entities, having been formed within weeks of each other, and each of whose manager, in accordance

3

with the Florida Secretary of State's records, is Daniel Molloy;" thus, "SF-672[ ] has now obtained title to the Property via deed to an affiliated entity." Id. at ¶¶ 17, 18.

As a result of the foregoing facts, William Ryan Homes now sues Whitney National Bank for (1) breach of contract and (2) unjust enrichment.

## II. Legal Standard

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Blackston v. State of Ala., 30 F.3d 117, 120 (11th Cir. 1994)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).  In reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and construes the facts in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).

In Bell Atlantic Corp. v. Twombly, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

4

> recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555 (2007) (internal citations omitted). Furthermore, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

"A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Therefore, a court may consider a document attached to a pleading without converting a Rule 12(b) motion into a motion for summary judgment. See CFBP, LLC v. Wells Fargo Bank, No. 8:09-cv-T-33AEP, 2010 WL 2136535, *2 (M.D. Fla. May 26, 2010). Additionally, "[u]nder Florida law, 'if an exhibit facially negates the cause of action asserted, the document attached as an exhibit controls and must be considered in determining a motion to dismiss.'" Id. (quoting Fladell v. Palm Beach County Canvassing Bd., 772 So. 2d 1240, 1242 (Fla. 2000)).

### III. Discussion

#### A. Count I

Under Florida law, which the Court applies in this diversity case, a plaintiff must assert the existence of the

5

following three elements to state a claim for breach of contract: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. <u>Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.</u>, 527 F. Supp. 2d 1355, 1365 (M.D. Fla. 2007).

In this case, William Ryan Homes has sufficiently alleged all three elements required to state a claim for breach of contract. William Ryan Homes states (1) that Whitney National Bank entered into an agreement with William Ryan Homes which provided, "among other things, that Whitney . . . must return the full deposit paid by William Ryan Homes . . . if Whitney elects not to perform CR672's obligations under the Mira Bella Agreement and William Ryan Homes elects not to purchase the Property," (Doc. # 2 at ¶ 9); (2) that Whitney National Bank did not perform CR672's obligations under the agreement, and that William Ryan Homes elected not to purchase the property, yet Whitney National Bank has not refunded the deposit to William Ryan Homes, <u>Id.</u> at ¶¶ 11-13; and (3) that William Ryan Homes has suffered damages as a result of Whitney National Bank's failure to return the deposit, <u>Id.</u> at ¶ 25.

Furthermore, William Ryan Homes attached the LRA itself to the Complaint, thus enabling the Court to examine its contents in the context of the motion to dismiss. Notably,

6

paragraph 5, beginning "[i]n the event of a default by Seller [CR672] under the Loan Documents, and if as a result thereof, Lender [Whitney National Bank] exercises any remedy under the Mortgage or otherwise acquires title to the Property," concludes with the following sentence: "If Lender elects not to perform Seller's obligations under the Contract, and William Ryan elects not to purchase the land . . . neither Lender nor William Ryan shall have any further liability to one another pursuant to this Agreement, *provided that Lender shall return the Deposit to Purchaser*." (Doc. # 2 at 57) (emphasis added).

Additionally, paragraph 6 of the LRA provides in relevant part:

> Purchaser [William Ryan Homes] shall continue to be entitled to receive credit for deposits paid on Lots purchased by Purchaser as contemplated by the Contract . . . . Purchaser hereby agrees that upon the acquisition of the Property by Lender [Whitney National Bank] (whether by foreclosure, deed-in-lieu of foreclosure or otherwise), the Deposit Lien shall be extinguished and Purchaser shall no longer hold any lien on the Property with respect to any deposits previously paid by Purchaser under the Contract, provided, however, that *Lender shall remain obligated to recognize the rights of Purchaser under the Contract* as contemplated by this Agreement, *including* the credit of the Deposit against the future Purchase Price of Lots, and *the return of the Deposit to Purchaser in the event Lender elects not to perform Seller's obligations under the Contract and William Ryan elects not to purchase the land . . .*

7

(emphasis added) <u>Id.</u>

However, Whitney National Bank argues that the "transfer of its interest in the Development Loan is specifically and carefully addressed in paragraph 8 of the Lender Recognition Agreement." (Doc. # 6 at 7). In addition to specifying that "such other persons succeeding to Lender's interest shall be included within the meaning of Lender for the purpose of this paragraph," paragraph 8 states:

> Upon and as a condition to any attornment under this paragraph, subject to the terms and conditions of this Agreement, (a) the Contract shall continue in full force and effect as a direct agreement between Purchaser and Lender (*or its successors or assigns*), and (b) Purchaser and Lender shall recognize the Contract and Purchaser's rights and obligations thereunder in a written instrument, and thereby will establish the direct privity of the estate and contract as between Lender and Purchaser with the same force and effect as if the Contract were originally made between them and Lender shall be bound by and shall satisfy the Seller's obligations thereunder . . . .

(Doc. # 2 at 57) (emphasis added). Whitney National Bank also focuses on the language in paragraph 10 of the LRA, which states that the agreement "shall be binding upon and shall inure to the benefit of the parties hereto and their respected heirs, personal representatives, successors and assigns . . ." <u>Id.</u>

Whitney National Bank attempts to assure the Court that

8

the LRA's "use of 'or' instead of 'and' or 'and/or' in [paragraph 8] demonstrates a clear intent for the parties to be bound in the exclusive alternative, not concurrently." (Doc. # 6 at 8). Whitney National Bank further argues that the use of the word "or" in paragraph 8 demonstrates that "the parties clearly contemplated that Whitney could sell or assign the underlying note and mortgage and that the obligations of the 'Lender' under the [LRA] would effectively travel with the ownership of the Development Loan to Whitney's successor in interest to the Development Loan." Id.

Whitney National Bank's argument is unavailing, however, because the applicable law regarding assignment of contractual obligations requires a less ambiguous statement of an assignee's intention to assume the duties under the contract. "Under Florida law, the assignment of a contract right does not entail the transfer of any duty to the assignee, unless the assignee assents to assume the duty. This includes the duty of performance under the contract." State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Center, Inc., 427 Fed. App'x 714, 719-20 (11th Cir. 2011) (internal citations and quotations omitted). "[A]n assignment normally involves only the assignee's acquiring the rights of the assignor and not necessarily the obligations, unless it is found that the

9

assignment was also a novation." Sans Souci v. Div. of Fla. Land Sales and Condos., 448 So. 2d 1116, 1120 (Fla. 1st DCA 1984). The drafter's choice of the conjunction "or" in a single clause within paragraph 8 of the LRA is insufficient to convince the Court that Whitney National Bank's obligation to return the deposit was relinquished along with Whitney's interest in the development loan. (Whitney's argument concerning placement of the word "or" is particularly unconvincing considering the drafter's application of the conjunction "and" when describing "the parties hereto and their . . . successors and assigns" in paragraph 10 of the agreement.)

Because the Court finds that the Complaint and the attachments thereto adequately support William Ryan Homes's claim for breach of contract at this juncture, Whitney National Bank's Motion to Dismiss is denied as to Count I.[1]

---

[1] Additionally, although the Court acknowledges Whitney's argument that William Ryan Homes has "adopted Whitney's interpretation of the LRA in pleadings filed in an action presently pending in the . . . Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida [asserting that SF-672 owes the deposit to William Ryan Homes]," (Doc. # 6 at 10), the Court notes that Whitney has not alleged that William Ryan Homes has failed to join a necessary party, or any similar procedural defect, but rather that William Ryan Homes has taken an alternate stance on liability regarding the relevant deposit in other pending litigation. At this juncture, the Court permits the breach of

**B. Count II**

"In Florida, the essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that made it inequitable for him to retain it without paying the value thereof." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1274 (11th Cir. 2009) (internal quotations and citations omitted).

Whitney National Bank argues that William Ryan Homes's claim for unjust enrichment must fail because an express contract exists between the parties, and "where there is an express contract between the parties, claims arising out of the contractual relationship will not support a claim for unjust enrichment." (Doc. # 6 at 13) (quoting Reese v. JPMorgan Chase & Co., 686 F. Supp. 2d 1291, 1309 (S.D. Fla. 2009)). This Court agrees that "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same

---

contract claim to proceed.  The Court will evaluate further evidence on the status of this related litigation, if necessary, at the summary judgment stage.

11

subject matter." Diamond "S" Dev. Corp. v. Mercantile Bank, 989 So. 2d 696, 697 (Fla. 1st DCA 2008). William Ryan Homes argues, however, that a case from the Southern District of Florida controverts this assertion; in Brueggemann v. NCOA Select, Inc., No. 08-80606-CIV, 2009 WL 1873651 (S.D. Fla. June 30, 2009), the defendant argued that the plaintiff's claim for unjust enrichment was "subject to dismissal because an unjust enrichment claim cannot survive when an express contract exists." Id. at *7. The court explained that "[the defendant's] argument ignores the basic tenet of alternative pleading under Rule 8(d)(2) of the Federal Rules of Civil Procedure." Id.

The tension between the holdings of Diamond "S" and Brueggemann is clarified by the discussion in Williams v. Bear Stearns & Co., 725 So. 2d 397 (Fla. 5th DCA 1998):

> There is no dispute that under Florida law, the general rule is that if the complaint on its face shows that adequate legal remedies exist, equitable remedies are not available. However, this doctrine does not apply to claims for unjust enrichment. It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails. Until an express contract is proven, a motion to dismiss a claim for promissory estoppel or unjust enrichment on these grounds is premature.

Id. at 400 (internal citations omitted). See also Central Magnetic Imaging Open MRI of Plantation, Ltd., v. State Farm

12

Mut. Auto. Ins. Co., 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) ("[U]njust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid."); 1021018 Alberta Ltd. v. Netpaying, Inc., No. 8:10-cv-568-T-27MAP, 2011 WL 1103635, *6 (M.D. Fla. March 24, 2011) ("Alternative pleading allows for a plaintiff's case to proceed in the face of uncertainty as to the existence of a contract or, perhaps, uncertainty as to whether the particular issue at hand falls within the ambit of a contract that otherwise exists between the parties.") (internal quotations and citations omitted). Therefore, since the parties do not contest (1) that a valid contract exists between William Ryan Homes and Whitney National Bank and (2) that the instant dispute arises out of this contractual relationship, Whitney National Bank's Motion to Dismiss is granted with prejudice as to Count II.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant's Motion to Dismiss (Doc. # 6) is **DENIED** as to Count I.

(2) Defendant's Motion to Dismiss (Doc. # 6) is **GRANTED** with prejudice as to Count II.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 20th

day of September, 2012.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

14